IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| LAURA CHRISTINA WEBB, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 2:11-CV-023 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g), of defendant Commissioner's final decision denying plaintiff's claims for disability insurance and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act. For the reasons provided herein, defendant's motion for summary judgment [doc. 12] will be granted, and plaintiff's motion for judgment on the pleadings [doc. 10] will be denied.

I.

*Procedural History*

Plaintiff was born in 1962. She filed her current application for benefits in January 2008, claiming to be disabled by back spasms, back pain, neck pain, diabetes,

depression, high cholesterol, arthritis, and "tumors in back." [Tr. 108, 128].[1] She now alleges a disability onset date of December 13, 2006. [Tr. 108].[2] The applications were denied initially and on reconsideration. Plaintiff then requested a hearing, which took place before an Administrative Law Judge ("ALJ") on March 23, 2009.

On June 24, 2009, the ALJ issued a decision denying benefits. He concluded that plaintiff suffers from the "severe" impairment of degenerative lumbar disease but that this condition is not equal to any impairment listed by the Commissioner. [Tr. 13, 16]. The ALJ found that plaintiff retains the residual functional capacity ("RFC") for the full range of sedentary exertion. [Tr. 16]. Relying on vocational expert testimony, the ALJ further found that plaintiff remains able to return to her prior work as a secretary. [Tr. 26, 49]. Plaintiff was thus ruled ineligible for benefits.

Plaintiff then sought, but was denied, review from the Commissioner's Appeals Council, not withstanding her submission of six pages of supplemental records. [Tr. 1-2, 4].[3]

---

[1] A previous claim was denied by administrative decision dated December 12, 2006, and was not further appealed. [Tr. 60].

[2] That date corresponds with the date of the prior administrative denial. [Tr. 60].

[3] Plaintiff's additional documents are discussed in the "Statement of Facts" section of her brief and are included in the administrative record. [Tr. 330-35]. This court can remand a case for further administrative proceedings where a claimant shows that late-submitted evidence meets each prong of the "new, material, and good cause" standard of sentence six, 42 U.S.C. § 405(g). Plaintiff, however, has made no effort to articulate how her evidence warrants sentence six remand, nor has she even cited sentence six. The issue is accordingly waived, and the additional evidence has *not* been considered by this court. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("Plaintiff has not only failed to make a showing of good cause, but also has failed to even cite this relevant section or argue a remand is appropriate."); *McPherson v. Kelsey*, 125 F.3d 989,
(continued...)

The ALJ's ruling therefore became the Commissioner's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481. Through her timely complaint, plaintiff has properly brought her case before this court for review. *See* 42 U.S.C. § 405(g).

II.

*Applicable Legal Standards*

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g)*; Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Beavers v. Sec'y of Health, Educ. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (quoting *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488 (1951)). In reviewing administrative decisions, the court must take care not to "abdicate [its] conventional judicial function," despite the narrow scope of review. *Universal Camera*, 340 U.S. at 490.

A claimant is entitled to disability insurance payments if she (1) is insured for disability insurance benefits, (2) has not attained retirement age, (3) has filed an application

---

[3](...continued)
995 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (citation omitted).

3

for disability insurance benefits, and (4) is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).[4] Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

---

[4] A claimant is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. 42 U.S.C. § 1382. "Disability," for SSI purposes, is defined the same as under § 423. 42 U.S.C. § 1382c(a)(3).

4

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiffs bear the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *See id.*

III.

*Analysis*

Plaintiff stopped working regularly in January 2004 after what she terms a "massive" back spasm. [Tr. 36]. Plaintiff can drive independently, cook simple meals, perform housecleaning and laundry, run errands, walk 3-4 miles (or swim) for exercise, and volunteer weekly at her church, at a community center, and at an area hospital (including four-hour shifts in the gift shop). [Tr. 40, 46, 137, 139, 166, 170]. It is plaintiff's position that she can perform these activities only for short periods of time.

Plaintiff claims to suffer three to five "bad days" of back spasms per month, particularly related to her menstrual cycle. [Tr. 38, 47, 242]. On such days, plaintiff contends that she cannot walk, stand, or perform any of the above-listed activities, and that she sometimes must use crutches or a wheelchair. [Tr. 138, 166]. Further, plaintiff testified that she can stand for no more than five or ten minutes even on her "good days." [Tr. 43]. Ultimately, plaintiff's position is summarized by the following statement in her Disability Report form: "I try to do whatever I can when I feel like it." [Tr. 135].

5

## A. Issues Waived

Plaintiff's theory on appeal is that the ALJ improperly disregarded the opinions of several medical sources who opined that she is unable to engage in full-time employment. The "Argument" section of plaintiff's brief presents argumentation as to three sources: Peter Brumlik, Cleas Svendsen, and Gordon Hoppe. The ALJ's treatment of those persons' views will be addressed in subsequent sections below.

In the "Statement of Facts" section of her brief, plaintiff also alludes to the opinions of Ron Baptist and Donna Abbott. However, plaintiff does not offer any argumentation that the ALJ committed any error whatsoever in his consideration of the evidence from those two sources. Any issue pertaining to Mr. Baptist or Ms. Abbott is therefore waived. *See Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006).

Plaintiff's "Statement of Facts" also alludes to the opinion of massage therapist Ladd Horner. Again, no argumentation is presented regarding Mr. Horner. Any such issue is again waived. *See id.* Further, Mr. Horner's file is the six pages of additional medical records submitted to the Appeals Council. [Tr. 5, 330-35]. This evidence was not even before the ALJ and, as noted above, could only be used by the plaintiff to argue for a sentence six remand. She has not, however, briefed this evidence relative to sentence six. For that additional reason, any issue pertaining to Mr. Horner is waived. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

6

## B. Peter Brumlik

It is initially noted that the parties and the administrative record make frequent reference to "Dr. Brumlik." That designation is technically correct because treating source Peter Brumlik has a Ph.D. [Tr. 232]. He is not, however, a medical doctor. He is a physician's assistant. [Tr. 232]. For consistency's sake, the court will refer to him as "Dr. Brumlik" but the issue of his qualifications warrants clarification.

The relevance of this issue is that a medical doctor is an "acceptable medical source" under the Commissioner's regulations who can provide evidence to establish *the existence of* a medically determinable impairment, *see* 20 C.F.R. § 404.1513(a), but a physician's assistant is not. *See* 20 C.F.R. § 404.1513(d)(1). Evidence from "other sources" such as Dr. Brumlik "may" be considered by the Commissioner "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability to work." 20 C.F.R. § 404.1513(d). The regulation's equivocal use of the word "may" is clarified by the Commissioner's Social Security Ruling 06-03p which explains, "Opinions from these medical sources who are not technically deemed 'acceptable medical sources,' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other evidence in the file." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (quoting SSR 06-03p, 2006 WL 2329939, at *3 (Aug. 9, 2006)). "[T]he adjudicator generally should explain the weight given to opinions for these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or

7

subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Cruse*, 502 F.3d at 541 (quoting SSR 06-03p, 2006WL 2329939, at *6).

Another initial issue bears noting. Dr. Brumlik essentially treated plaintiff only in 2004. He issued a vocational assessment in late 2005. The issue of whether plaintiff was disabled prior to December 13, 200<u>6</u> has already been resolved in her prior claim.

"Social Security claimants are bound by the principles of res judicata." *Drummond v. Comm'r of Soc. Sec.*126 F.3d 837, 841 (6th Cir. 1997). Thus, when a claimant has been previously adjudicated "not disabled," she bears the burden of proving that her condition has worsened since the date of the prior decision such that she is no longer capable of engaging in substantial gainful activity. *See Casey*, 987 F.2d at 1232-33. Therefore, plaintiff's burden now is to show that circumstances have changed such as to render her disabled post-December 12, 2006. There is thus an issue of chronological relevance as to Dr. Brumlik. That said, the court now turns to Dr. Brumlik's file and the ALJ's treatment of that source's vocational assessment.

The record documents that Dr. Brumlik saw plaintiff on five occasions. At her initial appointment on January 15, 2004, plaintiff reported chronic low back pain of nine years' duration. [Tr. 229]. An MRI revealed multilevel disc disease with mild disc protrusions and "a more focal disc excursion of the L5-S1 level." [Tr. 229, 257]. Dr. Brumlik did not feel that the disc protrusion was the cause of plaintiff's reported pain. [Tr.

8

229].[5]  Dr. Brumlik gave plaintiff an off-work excuse for the next eleven days. [Tr. 229].

On February 2, 2004, Dr. Brumlik wrote that plaintiff was "pain free." [Tr. 244]. He released her to return to work immediately and "encouraged her to wear her [back support] belt when her back is at risk." [Tr. 244].

Plaintiff returned to Dr. Brumlik in April 2004 reporting good days and bad days. She had not returned to work because she was "worried that her back will 'go out.'" [Tr. 231]. Plaintiff also reported "a lot of low back pain associated with her menses and also a groin pain." [Tr. 231]. Dr. Brumlik recommended physical therapy and opined that plaintiff's pain issues were "probably due to some peritoneal irritation associated with her menses." [Tr. 231].

Plaintiff saw Dr. Brumlik again on August 30, 2004. She claimed to still have "moments" when her back "goes out," but her support belt was beneficial. [Tr. 230].

Fourteen months later, plaintiff returned to Dr. Brumlik on November 16, 2005. The record indicates that this visit occurred because "her lawyer needs paperwork for a disability [sic]." [Tr. 236]. Plaintiff reported continuing monthly pain. [Tr. 235]. That day, Dr. Brumlik completed a Physical RFC Questionnaire. His opinions were inconsistent with the ability to engage in full-time employment due to limitations in sitting, standing, lifting, concentration, and postural activities. [Tr. 224-27]. In support of his assessment, Dr.

---

[5] Similarly, in October 2004 treating physician Max Nevarez wrote, "I did review her MRI which showed multiple levels of DJD with some mild disc extrusion but no evidence of any nerve displacement. There was a small hemangioma in one of the vertebral bodies which I told patient I was not concerned about." [Tr. 238].

Brumlik cited the January 2004 MRI, observations of tenderness, positive straight leg raising tests at ninety degrees, and plaintiff's subjective complaints. [Tr. 222-23].

The ALJ's written decision discusses Dr. Brumlik's opinion at length but does not fully adopt it. In material part, the ALJ explained his rejection of the opinion as follows:

> The claimant reported she was pain free in February 2004 and Dr. Brumlik released her to return to work. . . . She had only vague complaints of pain in March 2004 and she told Dr. Brumlik in March 2004 that she was afraid to return to work for fear her back would "go out" and not due to any continued, severe pain or functional limitations. The claimant reported to Dr. Brumlik in August 2004 that she had "moments" when her back "goes out" but again she did not report consistent, severe pain. . . . Despite her complaints of severe pain, the claimant did not return to Dr. Brumlik until November 2005 and despite her reports of severe back impairment she said she was not interested in medications or injections for her back. . . . The undersigned gives little weight to [the November 2005] assessments although they are from a treating source. These assessments are inconsistent with Dr. Brumlik's own objective, clinical findings as well as the claimant's reported daily activities. . . . Dr. Brumlik assessed in February 2004 that the claimant had no disabling impairment and there are no records which indicate her back impairment had significantly changed since that time. . . . The claimant's daily activities as well as her lack of medical treatment indicate she does not have exacerbations of back pain at that level of frequency or at that level of severity. At the time Dr. Brumlik made these assessments he had not seen the claimant since January 2005 [sic]. His assessments appear based more upon the claimant's subjective complaints rather than his own findings. This opinion is supported by the fact that Dr. Brumlik did not see the claimant after November 2005 but [his office] stated again in April 2006 that the claimant was unable to work.

[Tr. 24-25].

On the present record, the ALJ sufficiently explained his disagreement with Dr. Brumlik. The ALJ cited concerns with frequency of examination, supportability, and consistency with the record - all of which are legitimate issues regarding Dr. Brumlik's

10

assessment. *See* 20 C.F.R. § 404.1527(d)(2)(i), (3)-(4). The court finds no error.

C. <u>Dr. Svendsen</u>

Plaintiff was evaluated by Dr. Claes Svendsen for complaints of chronic low back pain in September 2007. Plaintiff stated that her back was improving but that she nonetheless had to frequently change positions in order to minimize pain and spasms. [Tr. 276]. Dr. Svendsen noted "minimal" tenderness and he reviewed the 2004 MRI. [Tr. 276]. Based on those observations and plaintiff's self-reporting, Dr. Svendsen wrote,

> Patient clearly has significant LS spine degenerative arthritis and disk protrusion. I believe she has significant limitations in her activities especially sitting. Her back would certainly make her a poor candidate for an 8 hour job either behind a desk or any kind of physical activity and I believe she is a candidate for permanent disability.

[Tr. 276]. Plaintiff visited with Dr. Svendsen again in January 2008, but the handwritten notes of that appointment do not indicate that her back was a point of discussion. [Tr. 275].

Fourteen months later, plaintiff returned to Dr. Svendsen "for follow up in regards to chronic low back pain." [Tr. 325]. Plaintiff claimed that her pain, mobility, and sitting discomfort were worsening, and she also reported a new complaint of vertigo. [Tr. 325]. On examination, plaintiff's low back was tender but there was no radiculopathy and she was neurologically intact. [Tr. 325]. Dr. Svendsen again opined,

> Chronic low back pain with intermittent exacerbation becoming more frequent and because of that is unable to hold down a job also in regards to her limitations for sitting for any length of time because of her low back pain exacerbated now by her vertigo which has limited her significantly in terms of activities and driving and does not seem to have gotten better the last six weeks.

11

> . . . I do recommend her for total disability because of her low back pain and exacerbated by vertigo symptoms.

[Tr. 325].

As he did with Dr. Brumlik's assessment, the ALJ discussed Dr. Svendsen's views at length.

> Although Dr. Svendsen is a treating source, the undersigned gives little weight to his opinion the claimant is disabled in part due to vertigo. . . . Dr. Svendsen's opinion is inconsistent with the medical evidence of record . . . . The scant evidence regarding vertigo in the records does not show the claimant has a severe impairment much less a disabling impairment. There are no objective, clinical findings of an impairment which would result in severe and disabling vertigo. Dr. Svendsen's opinion appears based solely upon the claimant's reports and not upon his own objective, clinical findings.
>
> . . .
>
> The claimant began treatment with Dr. Svendsen in September 2007 indicating she did not seek medical treatment from any source despite her complaints of disabling back pain after November 16, 2005, until this appointment. . . . Dr. Svendsen's only objective, clinical finding was of minimal back tenderness to palpation and the results of her 2004 MRI scan. Despite the lack of other findings, Dr. Svendsen opined the claimant was a candidate for permanent disability. The undersigned gives little weight to this opinion as the determination of disability is reserved for the Commissioner and the opinion appears to have been based primarily upon the claimant's subjective complaints and even those were not significant. The claimant returned to Dr. Svendsen in January 2008 but not for her back impairment. . . . The evidence of record spanning from 2004 through 2009 contains not a single treatment record from a doctor during one of [her] alleged severe exacerbations.
>
> . . .

12

> After the November 16, 2005 [sic] visit with Dr. Svendsen, there are no treatment records indicating the claimant sought medical treatment for her back impairment from any source until March 11, 2009[,] when she returned to Dr. Svendsen. . . . Dr. Svendsen's exam findings were essentially unchanged with only lumbar tenderness to palpation and no radiculopathy or neurological deficits. Dr. Svendsen opined the claimant is disabled due to her back impairment with inability to sit for any length of time. This opinion is given little weight as it is again inconsistent with the objective, clinical findings and the claimant's daily activities. The claimant did not tell Dr. Svendsen she had to spend much of her time on "bad days" in bed or in the recliner. She did not report she had to use crutches or a wheelchair on "bad days." Even with the need to shift positions during the day, the claimant is not precluded from the performance of all substantial gainful activity.

[Tr. 14, 25-26].

As with Dr. Brumlik, the ALJ adequately explained his rejection of Dr. Svendsen's views. A mere finding of lumbar tenderness is not necessarily consistent with the *extraordinary* level of pain and spasm reported by the plaintiff, and other sources have viewed the 2004 MRI results as insufficient to explain her complaints. Frequency of examination, supportability, and consistency are valid reasons for deciding not to adopt Dr. Svendsen's opinion. *See* 20 C.F.R. § 404.1527(d)(2)(i), (3)-(4). The court finds no error.

### D. Dr. Hoppe

Dr. Gordon Hoppe performed a consultative examination in March 2008. At that time, plaintiff reported the ability to walk three to four miles per day and climb one or two flights of stairs, but she allegedly could lift no more than five pounds, stand for only five minutes, and sit for only five to ten minutes. [Tr. 281].[6]

---

[6] The ALJ observed that plaintiff sat for a longer period during her administrative hearing,
(continued...)

13

On examination, plaintiff's gait and station were normal. [Tr. 282]. She could rise from a chair and get on and off of the examination table without difficulty. [Tr. 282]. Dr. Hoppe specifically noted that plaintiff uses no assistive devices. [Tr. 282].[7] Strength was normal in all major muscle groups. [Tr. 283]. Dr. Hoppe opined that, based on depression and chronic low back pain "secondary to degenerative disk disease and herniated nucleus polposus," plaintiff would be limited to lifting less than ten pounds, standing or walking less than two hours per workday, and sitting less than six hours per workday. [Tr. 283-84].

Dr. Hoppe's sitting and standing restrictions, if credited, would preclude full-time employment. The ALJ, however, gave little weight to Dr. Hoppe's assessment because that doctor's findings were essentially normal and the limitations appeared excessive in light of plaintiff's self-reported activities at the time. [Tr. 25]. These are valid reasons for declining to adopt Dr. Hoppe's opinion based on the instant record. *See* 20 C.F.R. § 404.1527(d)(3)-(4). The court finds no error.

### E. Medication

One final issue underlying the ALJ's decision bears mention. The court shares the ALJ's concern over plaintiff's refusal to take "traditional" medication. [Tr. 16, 19-20, 22-25]. At her last visit with Dr. Brumlik, plaintiff advised that she "is not interested in

---

[6](...continued)
which lasted at least 27 minutes. [Tr. 24, 33, 51].

[7] Dr. Hoppe's notation stands in stark contrast to plaintiff's contemporaneous representations that at times each month she is restricted to using crutches or a wheelchair. [Tr. 138, 286].

14

pursuing traditional medical approaches such as injections or nonsteroidal anti-inflammatories." [Tr. 235]. Plaintiff informed Dr. Hoppe that her medications were "basically herbal." [Tr. 281]. Plaintiff chooses to address her allegedly disabling pain and spasms by taking "white willow bark," "wild lettuce," and "parsley tea." [Tr. 153].

In March 2008, consulting psychological examiner Donna Abbott noted,

> She does not take any medication and said she will not take chemical substances into her body.
>
> . . .
>
> [S]he does not want to take medications of any sort as she does not want [to] put chemicals in her body, and she does not like how it makes her mind react. Additionally, she does not have insurance. She tries to treat her health problems and her depression by exercise and activity. She stated that this may go against her in her disability process as she does not take medications but she has firm convictions against taking medications.
>
> . . .
>
> Ms. Webb appears to be somewhat rigid in her beliefs. She is likely to have perfectionistic tendencies . . . . Ms. Webb might benefit from the use of medication; however, she is unwilling to try different medications to relieve her symptoms . . . .

[Tr. 286, 288, 290].[8]

At the March 2009 administrative hearing, plaintiff shifted gears somewhat by testifying that she would sometimes "take ibuprofen, which I don't care to take," in the overnight hours in response to a recent bout of leg pain. [Tr. 37]. Plaintiff further testified,

---

[8] The record does not indicate the source of plaintiff's "firm convictions against taking medications." Also, while plaintiff claims to have no health insurance, the court nonetheless takes judicial notice of the low cost of over-the-counter generic pain medication.

15

"I'll take that and try and get some sleep," and "the over-the-counter just kind of takes the edge off so I can have some relief." [Tr. 37-38]. In a June 2008 pain questionnaire submitted to the Commissioner, plaintiff similarly claimed that "as needed" use of ibuprofen two to four days per month would "take the edge off" her pain. [Tr. 169]. In light of plaintiff's representations to Ms. Abbott, Dr. Brumlik, and Dr. Hoppe, the court questions her claims to the Commissioner that she does in fact occasionally use ibuprofen. Regardless, a clear implication of her statements to the Commissioner is that she recognizes that "chemical" or "traditional" medication can be beneficial in treating her allegedly disabling condition yet she generally (or always) chooses not to take it.

A notation in Dr. Navarez's file is further illuminating. At her October 2004 appointment, plaintiff had lost 42 pounds. According to Dr. Navarez, "She said that she got on several herbs from a place in Virginia, lost the weight and says that the herbs helped her 'not become diabetic.'" [Tr. 238]. The treating physician disagreed. He wrote,

> I told her that I did not feel that the herbal medication had any inclination in making her nondiabetic. I felt that her increasing activity and weight loss helped her by far . . . . I told her that if [diabetic signs return] that I would encourage her to get on an insulin sensitizer. She certainly could continue with herbal medication but I think that we will go back and forth on this and I think she understands why.

[Tr. 238].

Therefore, at least two sources (Dr. Navarez and Ms. Abbott) have questioned plaintiff's near-total reliance on herbal therapy. Plaintiff is correct in her observation "that this may go against her in her disability process." Irrespective of whatever underlies

16

plaintiff's personal decision on this issue, the facts of her case could lead a reasonable mind to conclude that her purportedly disabling pain and spasms are not as bad as she claims. If they were - a reasonable mind could further conclude - then plaintiff would pursue every reasonably available option to alleviate her suffering.[9]

IV.

*Conclusion*

Under substantial evidence review, the ALJ did not err in concluding that plaintiff remains able to work. The ALJ considered the evidence, reached a conclusion, and sufficiently explained that conclusion. The substantial evidence standard of review permits that "zone of choice." *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

The court has no doubt that plaintiff suffers some measure of back discomfort. On the present record, however, is was not error for the ALJ to conclude that plaintiff remains able to perform sedentary exertion - a conclusion significantly more restrictive than the medium-level assessments of the nonexamining state agency physicians. [Tr. 26, 293-300, 315-22].

---

[9] No physician of record has noted that plaintiff's condition would specifically improve to a specific degree if she used over-the-counter and prescribed pain medication. This issue is therefore of course not grounds in and of itself to deny her claim. The issue is instead relevant to the ALJ's credibility determination regarding the severity of plaintiff's condition.

17

The final decision of the Commissioner will be affirmed. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge